We'll move to our second case of the morning, number 21-2255. Izariah Jump and the estate of Marciniak v. Village of Shorewood. Okay, we've just called the second case. It looks like we have the attorneys present. And we'll begin with counsel for the appellant. Go right ahead. Thank you, Your Honor. Janine Hoft of People's Law Office on behalf of the appellants, estate of Jonah Marciniak and Izariah Jump. The defendant police officers violently roused a naked, non-responsive, and vulnerable man from his bed after breaking into his home. The man became upset and crying. The defendants handcuffed, arrested, and took him to jail. The man, Jonah Marciniak's roommate, Eric Harper, had fallen out of their bedroom window. No crime had occurred. Marciniak became increasingly anguished and self-destructive while locked in the cell to the point of hanging himself from the jail bars, resulting in his untimely death. Appellants here seek reversal of the summary judgment granted to the defendant law enforcement officers by the district court below. The principal contentions in this case are that Jonah Marciniak's Fourth Amendment rights were violated in two ways. First, that the defendants falsely arrested Jonah Marciniak. And next, that Defendant Sergeant Smith, who was the sole custodian when Marciniak was locked in his cell, failed to protect him. First, as to the false arrest, defendants arrested Marciniak without probable cause. The actual facts and circumstances known to defendants were the following. That dispatch call had reported a man fell from a window. There was nothing claiming a crime was committed and no complaint that a crime had been committed. Harper, the injured man who has since recovered, has testified in this case that he told police on the scene that Marciniak committed no crime. There was a cell phone video taken by a neighbor showing Harper hanging from the window. It has some audible sound, but contains no evidence that a crime occurred. Police had responded to a disorderly conduct complaint between the two men several weeks before, but made no arrests and observed no injuries. Days before this incident, Marciniak had almost died of an opiate overdose and was taken to a hospital or mental health facility by police for treatment. Defendants admittedly did not have probable cause at the time they broke into the apartment with the assistance of the fire department, as they have claimed consistently that they entered for a welfare check. The condition then of the bedroom that they found when they located Marciniak non-responsive, naked on the bed, the photographs of the apartment in the record belie any contrary conclusion that there was no evidence of a crime or an altercation within the bedroom itself. The photographs instead support the general housekeeping habits of the men. In particular, with regard to the bedroom and the other rooms in the house, clothing and items are strewn about throughout the rooms of the apartment. In the bedroom, the defendants claim that two broken drinking glasses were suspicious, although it's undisputed that both men had been drinking. Both of those glasses were upright, one on the bedside table and one on the floor near a backpack. Neither is smashed. There also were spots of blood, but just that, spots on the bed linen and on an envelope laying on a radiator. Those spots of blood are of unknown origin and unknown age. There was a screen removed and laying on a chair. The window that the assumption was that Mr. Harper came out of was tilted open. There was no observable damage, no cracks, no broken glass to that window. There was a firefighter who was present in the bedroom who has testified that he did not observe any signs of an altercation in the room. Defendants' argument that there was probable cause for the charge of domestic violence is further exposed as a post hoc justification for the following reasons. Officer Rogers, another police officer from Shorewood who was on the scene, stated that there was no probable cause to arrest Marciniak. No officer ever read Marciniak his Miranda rights. The defendants failed to identify any charge or even any reason for his detention on Marciniak's booking sheet. And no arresting officer was identified on this booking sheet. And defendants themselves repeatedly claimed to investigators that Marciniak was merely detained and not arrested. And no, of course, probable cause analysis is an objective one. These statements by the defendants themselves are strong and material evidence of the reality of what defendants observed and concluded at the time. Marciniak should never have been taken into custody. There was no probable cause that a crime had occurred or that Marciniak was the perpetrator. Even if a crime had occurred, there was no danger of repetition as Harper had been removed from the scene and was receiving treatment. The second Fourth Amendment violation has to do with Defendant Smith's failure to protect Marciniak once he was locked in the cell. Marciniak, it's important to note, is on a vacation. I'm sorry to interrupt you. Can I ask you a question about before you shift to the failure to protect? Certainly. On the first issue, can you address the immunity point, the arguable probable cause on these facts? And the reason that I ask the question is what happened here, as you are quite right to emphasize, is extremely tragic. It's also, it has to be something that was quite unsettling to come upon for the police and fire department. At 1.30 in the morning to see somebody had fallen out of a fourth story window and then to see Mr. Marciniak, who it seems like struggled with substance abuse in the condition that he was in. And so I think you make a very good point in your papers that the Supreme Court has been very clear that you can't take people to the station and ask questions for purposes of asking questions and figuring out what happened. But it does seem to me that your adversary raises a pretty substantial argument about whether there's arguable probable cause just given the totality of these circumstances. Can you respond to that? Absolutely. And arguable probable cause still requires that an officer have a reasonable belief that probable cause exists. Our contention is that these officers themselves did not even believe that probable cause existed. And they, in fact, describe an investigative detention that they want to engage in by taking Marciniak back to the station. And to now, once they've been sued, to now explain that they did, in fact, have probable cause is belied by the fact that either they were incompetent to think that taking someone back to the station without probable cause was lawful, which, as you pointed out, under Dunaway, it is clearly not, and they could not have been mistaken about that. And that is our position within probable cause, taking the facts in the light most favorable to the plaintiff as the court must and reviewing the totality that there just was not even arguable probable cause in this case. If I could just briefly go through the second claim, which is the failure to protect the issues, again, that Marciniak is not available to dispute any of defendants' self-serving allegations or recollections. And defendant Smith himself would certainly have his testimony carefully scrutinized by a jury because he has admitted to lying about the observation checks that he made on Marciniak. He's been adjudicated guilty for the criminality of those actions. And just briefly, in terms of summarizing the reasons why a jury could find that defendant Smith's actions were, excuse me, objectively unreasonable, are the following. That he knew about the opiate overdose days before and he recognized it could have been a suicide attempt. That defendant Smith knew Marciniak was suicidal as evidenced by the fact that during the first half of his incarceration, he made frequent observations in accordance with the suicide watch protocol. And on the screening form, he did not indicate that Marciniak was not put on suicide watch on the booking sheet. He knew about the prior psychiatric treatment and despite his duty to explain, failed to indicate that this treatment was in fact actually for depression and suicide risk. He was on the scene. He saw Marciniak's condition at the apartment. He saw him crying, upset and distressed. Can you, we have a fairly recent case by the name of Pulera, P-U-L-E-R-A. Can you distinguish your situation from the one that confronted us in that case? Absolutely, Judge Ripple. And the issue in Pulera is that the defendants there did not fail to protect Mr. Pulera. In fact, they intervened in his suicide attempt and saved his life. His survival also meant that he was available to testify that he didn't tell anyone he was suicidal. He himself, Mr. Pulera, explained his disruptive behavior as the result of being cold and not suicidal. He testified that he attempted suicide, in fact, not because he was upset or distressed, but because he had not gotten a prescription medication that he believed he was entitled to. And unfortunately, his own expert could not connect the failure of getting that medication to the suicide attempt. So, and there's another recent case that was authored by Judge Barrett. And I believe, Judge Scudder, you were on that panel of Pittman versus City of Milwaukee, I believe it was. And in that case, it's a very important issue that was raised with the idea of how does one determine or analyze objective reasonableness, that this is a purely objective standard. And that in Pittman, it was held that it was improper to instruct the jury that a defendant must have consciously failed to act reasonably in preventing the suicide. Because the word consciously rendered the instruction impermissibly subjective. So even if a jury questioned whether defendant Smith actually knew Marciniak was about to commit suicide, these facts do combine to provide him adequate notice that a jury could find his conduct unreasonable. And if there are no further questions, I'd like to reserve some of my short time left for rebuttal. We're asking again that the granting of summary judgment to the defendants be reversed as to both claims. And this cause remanded for a trial on the merits. Thank you. Okay, thank you, Ms. Hoff. We'll come back to you for rebuttal. And Mr. Wirth, we'll turn it over to you. Yeah. Stand up where my stuff is. And may it please the court. The preliminary discussion that we need to have is that there were eight causes of action in this case that were dismissed, federal causes of action. There were 11 in total. The three state court actions were dismissed without prejudice and essentially are not before this court on the current appeal. Of the eight federal pleadings, federal causes of action that were pled, essentially only two of them have been appealed. The first being the false arrest allegation. The second being the failure of care. But then again, only as sergeant. So I think that for appellate purposes, we are essentially talking about two issues. The reported or alleged unlawful arrest and the failure of care of Sergeant Cody Smith. The idea that we talk about in the first claim with respect to public cause is, of course, an object of standard. I listened while counsel reiterated some interpretations that she has of the evidence in this case. And essentially suggests to this court that in some police reports, there were divisions, if you will, of how they characterized what they were doing with Mr. Evaluation of what the officers knew at the time they made this arrest. The idea here is that on a de novo review, the appellant's perspective, the appellant's argument is what I would call one notch off. They have suggested in their appeal that this court and the court below needs to afford them all reasonable interpretations, all reasonable inferences and all reasonable analyses of the undisputed facts. And while that is a mechanically accurate assessment of summary judgment, it overshadows the legal question, the substantive legal question that this court has. And the substantive legal question that the court has incorporates the arresting officers reasonable inferences. So on appeal, the appellant complains that too often the defendants rely upon the officers reasonable inferences and facts about the facts they face. But that is the issue. Because probable cause becomes an objective analysis, this court needs to know what the officers, you know, there at the scene confronted. And if we take a look at what the officers at the scene confronted, the court has already alluded to the fact we have a gentleman who has fallen out of a four story window at 130 in the morning. That is disputed. We have that gentleman badly injured to the point where every witness except Mr. Harper himself has characterized him as uncommunicative. So badly injured that he could not communicate. Indeed, in his deposition, Mr. Harper recalls nothing after the fall from the window except ostensibly the one comment to somebody, not sure who, Jonah didn't push me. For purposes of summary judgment, I will grant that we have to assume that occurred. For purposes of qualified immunity, we are allowed to examine the credibility of that statement. The credibility of a former roommate of the plaintiff of the decedent about whom no other witness heard his utterance. Moving beyond that, the other facts of this case are a 1.30 a.m. fall, four story window, grievous injuries. The fact that Harper and Marciniak were current or former roommates, a neighbor having heard the two arguing in the past, the officer's awareness that at that same apartment they had just weeks earlier responded to a domestic incident. At that same apartment, just days earlier, they had responded to a heroin overdose by Mr. Marciniak. As they gain entry to the apartment, what is now being described by the decedent's attorneys as a messy apartment is in fact an apartment with furniture askew, broken glass, blood on Marciniak, glass on Marciniak, blood on the bed, blood on an envelope, a screen pulled off the window, and a roommate essentially 35 feet down and possibly dying at the bottom of the window. Those are the undisputed facts. What the appellants ask is that the court undertake on behalf of the officers an analysis of those undisputed facts that finds innocent explanations for them. That's not what we're doing here. What we're doing here is did the arresting officers have a basis for probable cause? The commentary of Mr. Harper and the appellant argues that there are three reasons why they did not. The first is Mr. Harper's purported declaration at the bottom of the window. Second is cell phone video, which actually shows nothing but is essentially an audio recording of a man screaming. Doesn't show how he got out there, doesn't show what happened to get him out there. And third, an apartment that they believe can be reasonably interpreted as just messy, broken glass, furniture, blood. Against that, though, the appellants have undertaken a piecemeal evaluation of the facts that the officers faced, and that is improper. This court has to undertake a totality of the circumstances evaluation. With respect to everything those officers found, they had probable cause to arrest Jonah Marciniak. As the court has already alluded, there is a second completely separate analysis of the officers' conduct, and that is qualified immunity analysis. And under the qualified immunity analysis, that's where the court is permitted to take a broader view of the facts, do a little more weighing of the credibility, and determine whether, even if they were wrong, was their analysis reasonable. We've got three officers, early in the morning, bad injury, out of a window where there had been prior domestic disputes, out of a window where there had been prior heroin overdose, and from a room that is, at best, disheveled. And certainly within reason, the scene of some form of struggle, some form of criminal act. Under that analysis, now measure a video that shows nothing except for a man screaming to an occupant of the window from which he hangs, which could just as reasonably have been, I mean, the screaming wasn't, Jonah, I've fallen out the window, please help me. The screaming was, pull me back in. The statement of, the purported statement of Eric Carper, although the court has to consider it, in a qualified immunity analysis, the court can look at that statement and say, not a single officer heard Eric Carper say that, not a single fire department representative heard Carper say that, and indeed, under any scenario, none of the three officers that effected the arrest was the officer to whom that might have been told. And finally, the, if at best, the analysis of the condition of the bedroom, is that it is just as reasonable that it's a couple of sloppy drunken roommates goofing around, as it is, it's the scene of a dispute, of a physical dispute that ended with a person out the window. If that's the case, qualified immunity applies. Indeed, it doesn't even have to be even, it can be just a reasonable assumption. Again, qualified immunity applies. So, the premise here is that the facts taken as a totality generated probable cause for the arrest. The secondary analysis is, even if that was an incorrect decision, did the facts taken in their totality qualify immunity for these officers? And they did. The second claim that's being presented to this court is the claim of failure to afford proper care, or failure to protect from self-harm. This is not a negligence claim. This is, ostensibly, a Section 1983 claim. This isn't, Sergeant Smith didn't do something right. This is Sergeant Smith essentially and objectively ignored a condition about which he was aware. It's important to point out that Mr. Marciniak was not an Eighth Amendment prisoner. He was a pretrial detainee. And the analysis of Sergeant Smith's conduct with respect to him, therefore, proceeds under the analysis of whether it was objectively unreasonable. We have a prisoner, a detainee, that is in our custody and care for about two hours. In that two hours, Sergeant Smith does a visual and, on one instance, an interactive inspection of Mr. Marciniak six times. Seven times counting the intake interaction. Seven times in two hours, the Village of Shorewood Sergeant Cody Smith checked on Mr. Marciniak. Did he, at the end of the day, alter the sheet to add a time that he didn't check because he was afraid that he hadn't lived up to Shorewood's internal regulations? Absolutely, he did. And he was charged with essentially altering evidence. But it is undisputed, because there's a camera back there, it is undisputed that seven times within two hours Mr. Marciniak was checked on. So the concept now becomes, where is it that Sergeant Smith objectively and unreasonably ignored Mr. Marciniak's suicidal ideation? It's presented by the appellant as though it was an ignorance of a medical condition. It is, in fact, for purposes of this analysis, it has to be an ignorance of suicidal ideation. This is a gentleman who answered the form and said, no, I do not have suicidal ideation. The suggestion that the charge wasn't written in there, so they didn't really bring him in for purposes of an arrest, was explained in the deposition by the officers that he's a pretrial detainee. We don't keep him overnight. We take him down to the Milwaukee County Jail. And before we do that, we decide what we're going to charge him with and put that in. And that's part of the paperwork that goes to the Milwaukee County Jail. The suggestion that checking on him six times in two hours was in some fashion a kind of cursory or an effort to make this a suicide watch is completely made up. There is no testimony in this case that suggests that. And that becomes important because under an objectively unreasonable evaluation of Sergeant Smith's visitation with Mr. Marciniak, it is undisputed that he checked on him seven times in two hours. The second analysis, just as it is with respect to the false arrest claim, is qualified immunity. Now we get into the category of where if he made a mistake and if he should have seen that Mr. Marciniak was indeed suicidal, was his conduct so broad that it ignored that? And it's just the opposite. It is literally just the opposite. He checked on this gentleman seven times. It is a tragedy and, you know, 15 minutes isn't enough to talk about how badly this affects the officers themselves. It is a tragedy that Mr. Marciniak hangs up. However, the analysis here is even if Sergeant Cody Smith objectively, unreasonably ignored Marciniak's suicidal ideations, did he have a reasonable basis for what he did do? And I would represent to this court that what he did do was probably more attentive than any other case of this nature that this court sees. The difficulty, of course, is that he did change the log to add an eighth visit. It didn't occur. But that doesn't mean he didn't check him the first seven times. Moreover, in a qualified immunity analysis, this court is charged with, is there a situation out there? Admittedly, it doesn't have to be on point, although recent Supreme Court decisions are getting very close to it. Is there a case out there where a jailer checks on a person seven times in two hours and the person nonetheless performs self-harm? And the result of that facsimile puts officers on notice that there should have been more done. There is no evidence in this case of what more should have been done. Just an assertion, more should have been done. So under the analysis of both the objective unreasonableness and an analysis of qualified immunity, the claims against Sergeant Smith must also be dismissed. Thank you. Very well. Thank you, Mr. Wirth. Ms. Hoft, we'll return to you. You've got a little over a minute. You can rebut. Thank you, Your Honors. Just briefly on the failure to protect issue, Mr. Wirth has repeated over and over again that Marciniak was checked seven times in two hours. The reality is he was checked six times within the first hour, and Defendant Smith completely abdicated all responsibility and, as Mr. Wirth wants, did in fact ignore Marciniak for the last 45 minutes. The last observation was at 419 in the morning when he found him hanging, and then it was too late. Why did he take it upon himself to falsify his records if he didn't recognize that he had made a very big mistake? And in both of these issues, just briefly then on the false arrest, certainly there was a grievous injury to Harper. We appreciate that, but there was no immediacy here. Harper had been taken out of the situation. Marciniak was in no position to be taken into custody. If you believe Defendant's version, if the men had had a fight, it wasn't loud enough for anyone to hear. It wasn't vicious enough to leave any injuries on Marciniak, yet it somehow culminated in Marciniak being able to force Mr. Harper out of the window, maneuvering his body through that tilt in the window, but not forceful enough to propel him out, as he was able to grab onto the sill and hang there for a couple of minutes, which we know from the video of the cell phone, as he beseeches Marciniak to wake up, and also to pull me back in, but he specifically says, wake up, Jonah, wake up. We believe that a jury is a proper decider of the totality of these facts, considered in the light most favorable to the appellants. A jury would be in the best position to make a decision in this case on both claims, and we'd ask that the case be remanded for trial. Thank you. Okay, very well. Thanks to both counsel. The court will take the case under advisement.